THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CR-361-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| STEPHON MONTRELL HOOKER, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion by Defendant Stephon Montrell Hooker ("Defendant") to dismiss his indictment pursuant to Rule 12(b)(3)(B), Fed. R. Crim. P. [DE-22]. The motion was referred to this court and is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); Rule 59(b)(1), Fed. R. Crim. P. The government responded to Defendant's motion [DE-23] and this court held a hearing on 23 February 2009 to further develop the record. Accordingly, this matter is ripe for review. For the reasons set forth below, it is recommended that Defendant's motion to dismiss be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On 4 December 2008, Defendant was named in a one-count indictment charging that, after having been convicted of a crime punishable by a term of imprisonment exceeding one year, he did knowingly possess, in and affecting commerce, a firearm, in violation of 18 U.S.C. § 922(g)(1). The predicates for this federal offense were Defendant's prior convictions for embezzlement in violation of N.C. Gen. Stat. § 14-90 and for obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100. [DE-22.2]. The criminal judgment from the convictions specifies that each offense is a Class H felony under the North Carolina Structured Sentencing Act, N.C. Gen. Stat. § 15A-1340.10, and that Defendant has a prior record level of 1

for felony sentencing purposes. [DE-22.2]. On 5 February 2009, Defendant moved to dismiss the indictment in this case, contending the predicate state convictions were not offenses punishable by a term of imprisonment exceeding one year. [DE-22].

## DISCUSSION

Defendant contends that neither state conviction qualifies as a felony under federal law for purposes of adjudging him as a felon in possession of a firearm, because under the North Carolina structured sentencing scheme, his possible maximum sentence did not exceed twelve months. *See* Def.'s Mot. to Dismiss at 2 n.2 ("Def.'s Mot.").

Section 922(g)(1) criminalizes the possession of firearms for "any person [] who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). What constitutes a "crime punishable by imprisonment for a term exceeding one year" "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held" - in this case, North Carolina law. 18 U.S.C. § 921(a)(20). North Carolina employs a structured sentencing scheme in which offenses are divided into classes.[1] Under the state sentencing scheme, an individual defendant's minimum and maximum sentences are determined based on the class of his offense, his prior record and whether an aggravated, mitigated or presumptive sentence applies. In the present case, Defendant's November 2006

---

[1] The North Carolina structured sentencing scheme employs a grid, which is a two-dimensional chart. The grid's vertical axis lists the various classes of crime offenses. *See* N.C. Gen. Stat. § 15A-1340.17(c). The horizontal axis is the prior record level, which classifies a defendant's criminal history. *Id.* "Within the appropriate offense-prior record cell, the statute prescribes three minimum sentencing ranges for the individual defendant, dependent upon whether the [North Carolina state] court finds more mitigating factors, more aggravating factors, or otherwise. Once the [North Carolina state] court decides on a minimum, N.C. Gen. Stat. § 15A-1340.17(d) dictates the corresponding maximum for that minimum." *United States v. Jones*, 195 F.3d 205, 206 (4th Cir. 1999).

2

state convictions were considered Class H felonies. The minimum sentence for each conviction based on the class of offense ranges from four to twenty-five months, with a corresponding maximum sentence ranging from five to thirty months per conviction. *See* N.C. Gen. Stat. § 15A-1340.17(c), (d); *see also State v. Mullaney*, 500 S.E.2d 112, 114 (N.C. Ct. App. 1998) ("Under Structured Sentencing, the maximum possible term of imprisonment for a Class H felony is thirty months."). Based on the individual factors applicable to him (i.e., a prior record level of I and a finding that mitigating factors outweighed aggravating factors), *see* [DE-22.2], Defendant's maximum sentence was only five months. *See* N.C. Gen. Stat. § 15A-1340.17(c). If the North Carolina state court had determined that aggravating factors outweighed mitigating factors, Defendant's minimum sentence could have been eight months, in which event the corresponding maximum sentence would have been ten months. *See* N.C. Gen. Stat. § 15A-1340.17(c), (d); *see also Mullaney*, 500 S.E.2d at 114 (explaining "for a defendant with no prior criminal record, the maximum term of imprisonment for a Class H felony is ten months"). Accordingly, because he could not have been sentenced to imprisonment for a period greater than twelve months, Defendant argues that his prior state convictions are not qualifying felonies under § 922(g)(1) and thus the indictment should be dismissed. *See* Def.'s Mot. at 4-5.

Defendant acknowledges the Fourth Circuit precedent expressed in *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), which held that "to determine whether a [North Carolina] conviction is for a crime punishable by a prison term exceeding one year, ...we consider the *maximum aggravated sentence* that could be imposed for that crime upon a defendant with the *worst possible criminal history.*" *Id.* at 146 (emphasis added) (citing *Jones*, 195 F.3d at 206-08). In other words, the maximum punishment is the statutory maximum for the crime, regardless of the prior criminal record status of the individual defendant. *Jones*, 195 F.3d at 207. Here,

3

applying *Harp*, the statutory maximum sentence for each of Defendant's predicate offenses is 30 months. *See* N.C. Gen. Stat. § 15A-1340.17(c), (d); *see also Mullaney*, 500 S.E.2d at 114. However, describing North Carolina's sentencing scheme as "an *offender*-based [vs. offense-based] system of statutory maximums," Defendant contends "the *Harp* rationale should fall." *See* Def.'s Mot. at 4 (emphasis added). In support of his argument, Defendant relies on recent decisions reached by the Sixth Circuit in *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008) and the Supreme Court in *United States v. Rodriquez*, __ U.S. __, 128 S. Ct. 1783 (2008). *See id.* at 4.

In *Pruitt*, the Sixth Circuit, purportedly applying North Carolina law, held in direct contravention of *Harp* that the district court must account for a defendant's prior record level under North Carolina law in determining whether that defendant's prior North Carolina convictions qualify as predicates under the federal career offender sentencing guidelines. *See Pruitt*, 545 F.3d at 417, 419 ("In the context of North Carolina's structured sentencing scheme, an offense of conviction is "punishable" for a term exceeding one year only if the state court could have sentenced a hypothetical defendant *with the same prior record level* as the defendant's prior record level to a term exceeding one year.") (emphasis added). In so holding, the *Pruitt* court relied on the following: (1) the structure of the North Carolina structured sentencing scheme, which "effectively tailors the statutory maximum punishment available to each individual defendant," *id.* at 420; and (2) the *Rodriquez* court's consideration of a defendant's prior record level in determining the applicability of a state's recidivism enhancement statute. *See id.* at 423 ("Under [the North Carolina structuring scheme and the recidivism enhancement provision at issue in *Rodriquez*], the prior criminal record of the defendant operates to increase the defendant's sentencing exposure, reflecting a legislative

4

judgment to authorize harsher criminal penalties for persons who have previously engaged in criminal activity."); *see also United States v. Haltiwanger*, 2009 WL 350641, at *3 (N.D. Iowa Feb. 11, 2009) (noting "[t]he *Rodriquez* Court...focus[ed] on the sentencing characteristics of each particular defendant in one important respect; i.e., whether the defendant has prior convictions that would subject him to a stiffer penalty under a recidivism statute."). As acknowledged by the parties, however, *Pruitt* is not binding upon this court and in light of Fourth Circuit controlling law, this court does not find it persuasive. Moreover, this court is of the opinion that the holding in *Rodriquez* does not in fact undermine *Harp*.

In *Rodriquez*, the Supreme Court considered whether the "maximum term of imprisonment prescribed by law" must be computed with reference to state repeat offender laws in addition to the statute of conviction, holding in the affirmative. *Rodriquez*, 128 S. Ct. at 1793. Rodriquez was convicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 1786. Identifying two prior California burglary convictions and three prior Washington drug-trafficking convictions, the government sought an enhancement under the Armed Career Criminal Act ("ACCA"), which sets a 15-year minimum sentence "[i]n the case of a person who violates...18 U.S.C. § 922(g) and has three previous convictions...for a violent felony or a serious drug offense, or both...." 18 U.S.C. § 924(e)(1). *Id.* While the two burglaries qualified as "violent" felonies, the parties disagreed as to whether any of the Washington drug convictions qualified as "serious" offenses - that is, an offense "for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* at 1787 (citing 18 § U.S.C. 924(e)(1)). Under Washington law, Rodriquez faced a sentence of up to five years' imprisonment if his drug crime was a first offense. *Id.* at 1786 (citing Wash. Rev. Code §§69.50.401(a)(1)(ii)-(iv) (1994)). However, for persons convicted of a second or subsequent

5

offense, the term of imprisonment could be doubled. *Id.* (citing Wash. Rev. Code § 69.50.408(a)). "Thus, by virtue of this latter, recidivist, provision[,] [Rodriquez] faced a maximum penalty of imprisonment for 10 years." *Id.* at 1786-87.

Explaining the term "offense generally...describe[s] the elements constituting the crime," Rodriquez argued that the Washington state recidivism statute should not be factored into the court's calculation of his maximum term of imprisonment "[b]ecause prior convictions required for recidivist enhancements are not typically offense elements." *Id.* at 1788. The Supreme Court disagreed, observing in statutes predating the enactment of the ACCA that "the concept of 'maximum' term of imprisonment...necessarily referred to the maximum term prescribed by the *relevant criminal statute.*" *Id.* at 1792 (emphasis added). In other words, *Rodriquez* directs the federal sentencing court to look to the underlying state statute. In the instant case, the "relevant" statute is N.C. Gen. Stat. § 15A-1340.17(c)-(d).

In reviewing the applicability of the Supreme Court's decision in *Rodriquez* to this case, the court finds the Tenth Circuit's decision in *United States v. Hill*, 539 F.3d 1213, 1220 (10th Cir. 2008) instructive. In *Hill*, the Tenth Circuit granted a panel rehearing based on the Supreme Court's decision in *Rodriquez*, reversed itself on similar facts to the instant case and held that *Rodriquez* "demands that courts focus on the maximum statutory penalty for the offense, not the individual defendant" in determining whether a defendant is a convicted felon for purposes of § 922(g)(1). *Hill*, 539 F.3d at 1220 ("[f]ocusing on the maximum sentence for the predicate crime of conviction is mandated by the Supreme Court's analysis in *Rodriquez*"); *see also United States v. Taste*, 2008 WL 5232733, at *1 (4th Cir. Dec. 16, 2008) (unpublished per curiam opinion) (citing *Rodriquez* in support of its explanation that an "offense is considered generically in terms of how the law defines the offense and not in terms of how an individual offender might have

6

committed it on a particular occasion"). The *Hill* analysis comports with the manner in which this issue has been historically considered by the Fourth Circuit. *See e.g., Harp*, 406 F.3d at 246; *Jones*, 195 F.3d at 207. In rejecting the defendant's argument that the court consider defendant's prior record (and not the maximum statutory penalty for the offense) in determining whether his convictions constituted crimes punishable by imprisonment exceeding one year, the *Hill* court noted that defendant

> "ignores the structure of § 922(g)(1) and asks [the court] to focus instead on the structure of the Kansas sentencing scheme. He suggests that Kansas does not set a statutory maximum for a crime, but instead tailors each sentence to the defendant's criminal history. Although an individual defendant's sentence may be capped at his presumptive guideline range, this does not negate the Kansas code which sets a statutory maximum for each crime."

*Hill*, 539 F.3d at 1219.

Similarly, in the instant case, Defendant implores the court to reject *Harp* on the basis that "North Carolina crimes do not have statutory maximums inherent with the offense." Def.'s Mot. at 3. However, as the Tenth Circuit in *Hill* observed, "§ 922(g)(1) does not focus on the particular offender. Instead, § 922(g)(1) is analogous to 'maximum term of imprisonment...prescribed by law' for the 'offense,' focusing on the maximum punishment for 'any defendant charged with that crime.'" *Hill*, 539 F.3d at 1221 (citing *Harp*, 406 F.3d at 246); *Jones*, 195 F.3d at 207 (explaining "§ 922(g)(1)'s language can comfortably be reconciled with North Carolina's sentencing scheme by viewing the offense statutory maximum as the statutory maximum for the crime, regardless of the prior criminal record status of the defendant"). The holdings of both *Jones* and *Hill* are in accord with the *Rodriquez* court's conclusion that the "maximum term of imprisonment...prescribed by law" refers to the *maximum term prescribed by*

*the relevant criminal statute* - not the top sentence in a guidelines range. *See Rodriquez*, 128 S. Ct. at 1792.

Finally, Fourth Circuit cases decided subsequent to *Rodriquez* and *Pruitt* indicate that *Harp* remains the controlling precedent of this circuit, *see United States v. Moore*, 2008 WL 5396487, at *2 (4th Cir. Dec. 29, 2008); *Taste*, 2008 WL 5232733; *United States v. Taylor*, 2008 WL 4997572, at *2 (4th Cir. Nov. 24, 2008), and this court may not overrule or ignore existing precedent. *See United States v. Henry*, 11 Fed. Appx. 350, 351 (4th Cir. 2001) (unpublished per curiam opinion) ("[B]oth the district courts of [the Fourth] circuit and subsequent panels of [the Fourth circuit] are obliged to follow a decision of [the Fourth Circuit] until it has been overruled by the Supreme Court or a decision by [the Fourth Circuit] en banc."). In accordance with the reasoning in *Harp*, *Rodriquez* and *Hill*, this court finds that Defendant was convicted of two offenses, each punishable by imprisonment for a maximum term up to 30 months. *See* N.C. Gen. Stat. § 15A-1340.17(c), (d); *see also Mullaney*, 500 S.E.2d at 114. Because each offense was punishable by imprisonment for a term exceeding one year, the court recommends denying Defendant's motion to dismiss.

## CONCLUSION

For the reasons set forth above, the court RECOMMENDS that the defendant's motion to dismiss be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall

8

Case 5:08-cr-00361-FL   Document 29   Filed 02/26/09   Page 8 of 9

bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 26th day of February, 2009.

*Robert Jones*
Robert B. Jones, Jr.
United States Magistrate Judge